**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

JOSE SANTOS DE LA CRUZ-GARCIA,    )
                                           )
        **Plaintiff,**           )
v.                                )          **Civil Action No. 1:16-05733**
                                           )
CDR KELLY LUCAS, *et al.*,            )
                                         )
        **Defendants.**        )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 11), filed on August 17, 2016. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 13.) Plaintiff filed his Responses in Opposition on September 8, 2016. (Document Nos. 14 - 16.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted.

## FACTUAL AND PROCEDURAL HISTORY

On June 27, 2016, Plaintiff, acting *pro se* and an inmate at FCI McDowell, filed his Application to Proceed Without Prepayment of Fees and Complaint seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document

---

[1]  Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed

Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Kelly Lucas, Health Services Administrator; and (2) Dr. Howard Sathre, Clinical Director. (Document No. 2.) Plaintiff alleges that the above Defendants acted with negligence and deliberate indifference by failing to provide appropriate treatment for the fracture to his right thumb. (Id., pp. 4 - 8.) Plaintiff indicates that he was evaluated by an outside orthopedic surgeon, Dr. Chris Vasilakis, on July 8, 2015. (Id., p. 8.) Plaintiff complains that Defendants have knowingly failed to follow the treatment plan of Dr. Vasilakis. (Id.) Plaintiff contends that Dr. Vasilakis' treatment plan recommended physical therapy for massage, desensitization, and range of motion exercises to improve the function of his thumb. (Id.) Plaintiff states that "Defendants have failed to provide the prescribed and recommended therapy." (Id.) Plaintiff alleges that his "condition has worsened due to the failure." (Id.) As relief, Plaintiff requests monetary damages. (Id.)

By Order entered on June 30, 2016, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 4.) On August 17, 2016, Defendants filed their "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 11 and 12.) First, Defendants argue that Plaintiff's Bivens claim should be dismissed because: (1) "Plaintiff failed to exhaust his administrative remedies" (Document No. 12, pp. 6 – 8.); (2) "Plaintiff cannot establish an Eighth Amendment violation" (Id., pp. 8 – 13.); (3) "Defendants are entitled to qualified immunity" (Id., pp. 13 – 15.); and (4) "Defendants Lucas is a U.S. Public Health Service Employee and is entitled to absolute immunity." (Id., pp. 15 – 16.) Next, Defendants argue that Plaintiff's FTCA claim should be dismissed because "Plaintiff failed to exhaust by filing an Administrative Claim under

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2

the FTCA." (Id., pp. 16 – 17.)

As Exhibits, FBOP Defendants attach the following: (1) The Declaration of Sharon Wahl (Document No. 11-1.); (2) A copy of SENTRY "Administrative Remedy History Generalized Retrieval" regarding Plaintiff (Document No. 11-2.); (3) A copy of the Declaration of Howard Sathre, M.D. (Document No. 11-3.); (4) A copy of Plaintiff's pertinent medical records (Document No. 11-4.); and (5) A copy of the Declaration of Kelly Lucas (Document No. 11-5.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on August 18, 2016, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 13.) On September 8, 2016, Plaintiff filed his Response in Opposition, Memorandum in Support, and Declaration. (Document Nos. 14 - 16.) As Exhibits, Plaintiff attaches the following: (1) A copy of Warden John B. Fox's "Response to Request for Administrative Remedy #832995-F1" dated August 31, 2015 (Document No. 15, p. 13.); (2) A copy of Plaintiff's "Request for Administrative Remedy" dated August 21, 2015, wherein Plaintiff complains of "bad handling of my medical records" (Remedy ID No. 832995-F1) (Id., pp. 14 - 17.); and (3) A copy of notification to Plaintiff dated October 7, 2015, informing Plaintiff that he had been approved for referral to an orthopedist (Id., p. 18.).

## **FACTUAL HISTORY**

Based upon a review of Plaintiff's medical records, Plaintiff injured his right thumb during an altercation at FCI Cumberland, Maryland in May, 2015. X-rays were conducted, which revealed a fracture of the right thumb at the base of the first metacarpal. (Document No. 11-4, p. 3.) Plaintiff was prescribed ibuprofen and an urgent consult request was written for an evaluation by an

orthopedist. (Id.) On June 3, 2015, Plaintiff was evaluated at Mountain State Orthopedics. (Id., p. 5.) Upon examination, Dr. Chris Vasilakis noted that Plaintiff had no bruising around the thumb, some swelling at the base of the first metacarpal, limited range of motion of the thumb secondary to pain, and good IP and MP joint motion. (Id.) Upon review of the x-rays, Dr. Vasilakis noted that the initial x-ray revealed minimal displacement of the first metacarpal fracture and the repeat x-ray revealed adequate alignment of the fracture with mild displacement. (Id.) Dr. Vasilakis noted that because "the facture is comminuted and the proximal portion of the fracture is only a few millimeters in size, this would be very difficult to reduce anatomically and fix surgically." (Id.) Dr. Vasilakis recommended immobilization with a splint for 3 to 4 weeks and to return for a follow-up in 3 to 4 weeks to begin physical therapy. (Id.) Dr. Vasilakis further prescribed Tylenol with codeine for pain. (Id., p. 5 and 7.)

On July 8, 2015, Plaintiff was returned to Mountain State Orthopedics for his follow-up appointment with Dr. Vasilakis. (Id., p. 9.) Upon examination, Dr. Vasilakis noted tenderness over the joint, mild limitation with range of motion, and mild swelling. (Id.) Dr. Vasilakis conducted a repeat x-ray, which revealed consolidation and healing of the first metacarpal fracture. (Id.) Dr. Vasilakis recommended physical therapy for massage, desensitization, and range of motion exercises to improve thumb function. (Id.) Dr. Vasilakis noted that Plaintiff stated that he was "very unhappy and would like to have an opinion from a hand specialist because he feels there is something wrong and it needs to be fixed surgically." (Id.) Dr. Vasilakis noted that he explained to Plaintiff that "this fracture will be very difficult to fix surgically and is healing adequately without surgery." (Id.) Plaintiff, however, remained "adamant" that he needed to see a hand specialist. (Id.) On July 20, 2015, medical staff at FCI Cumberland wrote a consult request for

4

physical therapy. (Id.) On July 27, 2015, medical staff noted that Plaintiff would be allowed to use the splint until physical therapy was completed and there was marked improvement in Plaintiff's condition. (Id.)

On August 26, 2015, Plaintiff was transferred and arrived at FCI McDowell. An intake screening was completed by Physician Assistant ["P.A."] Chandra Carothers, who noted that Plaintiff had a finger brace that had been provided to him by Mountain State Orthopedics. (Id., pp. 24 – 28.) On August 31, 2015, Defendant Sathre evaluated Plaintiff during a Chronic Care visit. (Document No. 11-3, p. 2.) Defendant Sathre noted that Plaintiff complained of thumb pain and Defendant Sathre recommended follow-up with a mid-level provider. (Id.) On September 23, 2015, a P.A. wrote a new consult request for evaluation by an orthopedist. (Id.) On September 24, 2015, a follow-up x-ray was requested. (Id.) The follow-up x-ray was conducted on September 29, 2015, which revealed negative findings except for an old facture deformity at the base of the first metacarpal. (Id.) On October 14, 2015, Plaintiff reported to sick-call complaining that he was supposed to receive therapy for his broken thumb and that he wanted surgery. (Id.) Plaintiff was placed on call out to report to Health Services, but Plaintiff failed to show for his appointment. (Id.)

On October 23, 2015, Plaintiff was evaluated by mid-level provider from an outside orthopedic practice. (Id., p. 3.) Plaintiff complained that he had difficulty doing "dips" and activities due to his thumb pain. (Id.) The orthopedist reviewed Plaintiff's x-rays and noted no acute fracture or dislocation, but an old fracture deformity at the base of the first metacarpal. (Id.) The orthopedist further noted post-traumatic first CMC osteoarthritic changes of the right hand. (Id.) The orthopedist opined that no further intervention was needed and advised Plaintiff that the

5

splint was only necessary to help with arthritic changes. (Id.) The orthopedist advised Plaintiff to avoid activities that increased his symptoms, recommended anti-inflammatory medication and wearing a splint at night, and offered an injection. (Id.) Plaintiff, however, refused the injection. (Id.) Although Plaintiff has been treated by Health Services for other conditions since October, 2015, Plaintiff has sought no further treatment for his thumb. (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no

genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

### 1.      Bivens Claim:

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis

v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending

Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due

Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action

under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents

acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof

of causation between the official's conduct and the alleged injury is necessary for there to be

liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional

right by a person acting under color of federal law.[2] The United States Supreme Court has held

that an inmate may name a federal officer in an individual capacity as a defendant in alleging an

Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S.

294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against

the United States, federal agencies, or public officials acting in their official capacities. See FDIC

v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce,

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A.    Defendant Lucas is entitled to absolute immunity.

In Defendants' Motion, Defendant Lucas argues that she is a United States Public Health Service Employees and is entitled to absolute immunity. (Document No. 12, pp. 15 – 16.) In support, Defendant Lucas attaches her Declaration stating as follows: "I am a Commissioned Officer in the United States Public Health Service, and have been such at all times relevant to this issue." (Document No. 11-5.)

In Response, Plaintiff argues that Defendant Lucas is not entitled to absolute immunity. (Document No. 14, p. 4.) Plaintiff contends that "[w]here CDR Kelly Lucas is an administrative official, her supervisory role was to administer and supervise the prescribed treatment plan prescribed by the outside orthopedic surgeon." (Id.) Plaintiff alleges that he did not receive "proper physical therapy as provided by the outside surgeon, [which] is proof that defendant has not supervised and administered the relevant staff as her job as requires." (Document No. 15, pp. 10 – 11.)

Title 42 U.S.C. § 233(a) provides as follows:

The remedy against the United States provided by sections 1346(b) and 2672 of Title 28 . . . for damages for personal injury, including death, resulting from the performance of medical, surgical, dental or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim.

Thus, Congress made proceedings under the Federal Tort Claims Act the sole avenue to seek relief against a Public Health Service employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The United States Supreme Court

has held that "[t]he immunity provided by § 233(a) precludes *Bivens* actions against individual [Public Health Service] officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment." Hui v. Castaneda, 559 U.S. 799, 130 S.Ct. 1845, 1847, 176 L.Ed.2d 703 (2010)(stating that Section 233(a) "plainly precludes a *Bivens* action against petitioners by limiting recovery for harms arising from the conduct at issue to an FTCA action against the United States.") Defendant Lucas holds the position of the Health Services Administrator at FCI McDowell. Thus, Plaintiff appears to allege that Defendant Lucas is responsible for failing to ensure that he was provided appropriate medical care. Defendant Lucas was clearly acting within the scope of her employment when performing functions pertinent to her position, such as her administrative oversight and supervision of the Health Services Department. Based on the foregoing, the Court finds that Defendant Lucas was a Commissioned Officer in the United States Public Health Service during the time period relevant to this Complaint and has absolute immunity from suit for all claims arising from the medical care provided to Plaintiff. The Court, therefore, respectfully recommends that Defendant Lucas' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" be granted. The undersigned finds it unnecessary to consider the other reasons which Defendant Lucas has submitted for dismissal as to Plaintiff's Bivens claim.

**B.** **Failure to exhaust claim of inadequate medical care at FCI McDowell.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v.

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983

Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

---

of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that

the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances

13

occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his Bivens claims regarding his medical care at FCI McDowell. (Document No. 12, pp. 6 – 8.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 11-1.) Ms. Wahl declares that

in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration (Id., pp. 2 - 4.):

* * *

4.      A review of SENTRY, the BOP's online inmate information system, shows that Plaintiff has filed no administrative remedies regarding medical care at FCI McDowell.

5.      Plaintiff filed one remedy request at FCI McDowell regarding a disciplinary action on March 9, 2016.

* * *

(Id.) Defendants argue that since Plaintiff was able to file an administrative remedy request three months prior to filing his Complaint, any "claim that he was unable to obtain a remedy form at FCI McDowell on which to address his medical care are suspect at best." (Document No. 12, p. 7.) Accordingly, Defendants argue that Plaintiff's Bivens' claim based upon medical treatment provided at FCI McDowell is unexhausted and should be dismissed. (Id.)

In Response, Plaintiff first argues that "he started the [administrative remedy] process while being housed at the hold-over facility in Oklahoma, but the process was either discontinued or overlooked." (Document No. 14, p. 1.) Second, Plaintiff argues that he filed a BP-8, but it was denied "as being incompetently filed." (Document No. 15, p. 4.) Plaintiff states that the Court should consider that Plaintiff does not have an understanding of all the procedures to exhaust. (Id.) Plaintiff, therefore, argues that any further attempts at exhaustion would have been futile. (Id.) As Exhibits, Plaintiff attaches copies of administrative remedies filed at FTC Oklahoma regarding his medical treatment at FCI Cumberland (Id., pp. 13 – 17.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly

exhaust his administrative remedies pursuant to the PLRA concerning his claim of inadequate medical care at FCI McDowell. Although Plaintiff contends that he started the exhaustion process while he was incarcerated at the Federal Transfer Center in Oklahoma, Plaintiff acknowledges that the did not fully exhaust his administrative remedies. Furthermore, the administrative remedies filed while he was incarcerated at the Federal Transfer Center involved allegations of inadequate medical care at FCI Cumberland.[4] Even assuming Plaintiff fully exhausted his claims concerning medical care at FCI Cumberland, exhausting an inadequate medical care claim at one institution does not provide an inmate with blanket exhaustion as to inadequate medical care claims concerning all future institutions. Plaintiff's claim concerning medical treatment at FCI McDowell clearly involves different medical staff and at a different location. An Informal Resolution Form and Administrative Remedy Request must be submitted at the facility where the complained of incident occurred. Although Plaintiff claims that he filed an Informal Resolution Form at FCI McDowell, Plaintiff states that it denied as improperly filed.[5] Plaintiff acknowledges that he made

---

[4] Furthermore, the undersigned notes that an inmate's transfer to another facility does not render the administrative remedy process unavailable as to claims concerning incidents occurring at the previous institution. *See Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002)(finding "[t]he fact that [plaintiff] happened to be a prisoner in various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit."); *Jackson v. Studel*, 2010 WL 1689095, * 2 (W.D.N.C. April 26, 2010)("Plaintiff's failure to exhaust his remedies is not . . . excused by his transfer to a different facility."); *Custer v. West Virginia Northern Regional Jail*, 2009 WL 1390817 (N.D.W.Va. May 15, 2009)("There is simply nothing in the PLRA, or the pertinent case law, which supports the plaintiff's assertion that a transfer to another facility necessarily renders his administrative efforts futile."); *Hendricks v. Barnes*, 2007 WL 2257565, * 2 (M.D.N.C. Aug. 3, 2007)("[A] plaintiff will not be excused from exhaustion because he is no longer at the facility where the complained of incident occurred.")

[5] Although Plaintiff alleges that he attached a copy of his Informal Resolution Form filed with FCI McDowell, a review of Plaintiff's Exhibits does not reveal such a filing.

no further attempts at exhaustion. It is well established that claims are precluded if not raised at all three levels of the administrative remedy process. Everett v. Francis, 2010 WL 1490479 (N.D.W.Va. April 13, 2010)(To exhaust a claim properly, it must be raised in all three steps), aff'd, 390 Fed.Appx. 266 (4th Cir. 2010); also see 28 C.F.R. § 542.15(b)(2)(an inmate may not raise in an appeal issues not raised in the lower level filings). To the extent that Plaintiff claims that any further attempts at exhaustion would have been futile, his claim is without merit. Plaintiff appears to argue that any further attempts at exhaustion would have been futile because he is uneducated on the exhaustion process. The United States Supreme Court, however, has stated that it "will not read futility or other exceptions into statutory exhaustion requirements. . . ."[6] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion requirement."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust

---

[6]  Plaintiff appears to rely on the exhaustion standard for Section 2241 Petitions. Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury. It is clear, however, that "[e]haustion of administrative remedies is not rendered futile simply because an inmate anticipates he will be unsuccessful in his administrative appeals before the 12-month pre-release mark." *Wright v. Warden*, 2010 WL 1258181, * 1 (D.Md. Mar. 24, 2010)(slip copy).

the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's claim.

### C.   No evidence of deliberate indifference.

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure

18

of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101

S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must

prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently

serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'"

Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375,

1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir.

1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental

injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth

Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim

involves a condition which places an inmate at substantial risk of serious harm, usually loss of life

or permanent disability, or a condition for which lack of treatment causes continuous severe pain.

The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th

Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference
> to a serious medical need, the treatment must be so grossly incompetent, inadequate
> or excessive as to shock the conscience or to be intolerable to fundamental fairness.
> * * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

Miltier v. Beorn, 896 F.2d 848, 854 - 55 (4th Cir. 1990)(*recognized in* Sharpe v. South Carolina

Dept. of Corr., 621 Fed.Appx. 732, 733 (4th Cir. 2015) *as overruled in part on other grounds by*

Farmer, 511 U.S. at 837, 114 S.Ct. 1970). See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir.

1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-

threatening and intentionally ignored the situation and refused to seek medical assistance provided

a reasonable basis for finding deliberate indifference to inmate's medical needs.); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978), <u>cert. denied</u>, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); <u>Russell v. Sheffer</u>, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. <u>See</u> <u>Farmer</u>, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

Plaintiff alleges that Defendants Lucas and Sathre acted with deliberate indifference in failing to provide physical therapy for his broken thumb. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of

treatment causes continuous severe pain. Plaintiff alleges that his condition caused continuous pain and suffering. Accordingly, the undersigned will assume for purposes of this motion that Plaintiff's injuries were serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendants Lucas and Sathre acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendants acted with deliberate indifference in failing to provide him with physical therapy, which had been recommended by an outside orthopedist. The record reveals that while incarcerated at FCI Cumberland, Plaintiff was returned to Mountain State Orthopedics on July 8, 2015, for his follow-up appointment. Dr. Vasilakis noted that the x-ray revealed that Plaintiff's thumb was healing adequately without surgery and he recommended physical therapy for massage, desensitization, and range of motion exercises. Plaintiff continued to receive medical treatment until his transfer to FCI McDowell on August 26, 2015. Plaintiff was evaluated by Defendant Sathre on August 31, 2015, who noted that Plaintiff complained of thumb pain. Defendant Sathre recommended an evaluation by an orthopedist. Approximately three weeks later, a new consult request for an evaluation by an orthopedist was made and follow-up x-rays were conducted. The x-rays conducted on September 29, 2015, revealed negative findings except for an old fracture deformity at the base of the first metacarpal. On October 14, 2015, Plaintiff reported to sick-call complaining that he needed physical therapy. Plaintiff, however, failed to report to his sick-call appointment. On October 23, 2015, Plaintiff was evaluated by an orthopedist who determined that no further intervention was necessary. The orthopedist noted no acute fracture or dislocation and only post-

traumatic first CMC osteoarthritic changes to the right hand. Plaintiff was advised to use anti-inflammatory medication, to wear a splint at night to help with the arthritic changes, and to avoid activates that increased his symptoms.

Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The Court finds that Defendants did not act with deliberate indifferent in providing medical treatment for Plaintiff's thumb injury. The record reveals that Plaintiff was evaluated by Defendant Sathre within a few days after arriving at FCI McDowell. Defendant Sathre submitted a consult request for an evaluation by an orthopedist. In less than two months, an additional consult request was made, x-rays were conducted, and Plaintiff was evaluated by an orthopedist. The orthopedist determined that no further intervention was necessary and did not recommend physical therapy. Although Plaintiff may feel that physical therapy is necessary, an inmate's disagreement with his medical care or the course of treatment for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Furthermore, there is no evidence that Defendants or medical staff at FCI McDowell knowingly disregarded Plaintiff's need for medical treatment, physical therapy, and an evaluation by an orthopedist. The medical records reveal that Defendants made sufficient efforts to treat Plaintiff's thumb injury. Plaintiff appears to simply

disagree with the appropriate course of treatment. As stated above, an inmate's disagreement with his medical care or the course of treatment is an insufficient basis for a constitutional claim. See Wright v. Collins, 766 F.2d at 849; Lewis v. Proctor, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); Oglesby v. Abbassi, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). Accordingly, the undersigned finds that Defendants Lucas and Sathre did not act with deliberate indifference in providing medical treatment for Plaintiff's condition. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal regarding Plaintiff's Bivens claim.

**2.      FTCA Claim:**

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his FTCA claim, which deprives this Court of subject matter jurisdiction and requires dismissal of his FTCA claims. (Document No. 12, pp. 16 - 17.) Specifically, Defendants explains that Plaintiff "never filed an administrative tort claim with the agency regarding his medical treatment at FCI McDowell." (Id.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Legal Assistant for the Consolidated Legal Center at FCI Beckley. (Document No. 11-1.) Ms. Wahl declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Ms. Wahl explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Wahl states as follows in her Declaration: "A review of BOP records shows that Plaintiff never filed an administrative tort claim with the agency regarding

23

his medical treatment at FCI McDowell." (Id.)

In Response, Plaintiff states that he "believes that where he has complained on a numerous of occasions about the discomfort caused by the hand injury, an administrative claim has been presented." (Document No. 14, p. 2.) Plaintiff further states that he filed a BP-10, but it "has never been answered." (Document No. 15, p. 11.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[7] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994)(citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[8]

---

[7]  Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[8]  The administrative process which inmates must exhaust when they have complaints under the

See Plyer v. United States, 900 F.2d 41, 42 (4ᵗʰ Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the FTCA. Although Plaintiff contends that he filed administrative remedies with the prison, the exhaustion requirements concerning FTCA and Bivens actions differ.[9] Having examined Plaintiff's Exhibits, the Court finds that the administrative remedies filed by Plaintiff relate to the exhaustion of his Bivens claim concerning medical care at FCI Cumberland, not his FTCA claim. Plaintiff fails to produce any documents indicating that he exhausted his FTCA claim. Furthermore, Plaintiff appears to argue that the filing of an administrative tort claim was unnecessary based upon his "numerous complaints." Such an argument, however, is without merit. As explained above, Section 2675(a) requires that an

---

FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

[9]   Exhaustion requirements concerning FTCA and Bivens actions differ. See Davis v. United States, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); Murphy v. Inmate Systems Management, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008).

administrative claim be submitted to the appropriate agency and denied before suit can be filed. Accordingly, the undersigned recommends that Plaintiff's FTCA claim be dismissed for failure to exhaust.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 11), **DISMISS** Plaintiff's Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge

Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: November 15, 2016.

Omar J. Aboulhosn
United States Magistrate Judge